UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------
                                  :
MONA HAMZA                        :
                                  :      07 Civ. 5974 (FPS)
                                  :
        Plaintiff,                :   **MEMORANDUM DECISION AND ORDER**
                                  :   **RULING ON MOTIONS IN LIMINE**
    v.                            :
                                  :
SAKS FIFTH AVENUE, INC.,          :
                                  :
                                  :
        Defendant.                :
                                  :
----------------------------------


I.  Background

        Mona Hamza, the plaintiff, filed this civil action in this
Court against the above-named defendant and Saks Incorporated,
which was later dismissed from the case.  The plaintiff, a former
employee of the defendant alleged violations of Title VII of the
Civil Rights Act of 1964, Section 701 et seq., 42 U.S.C.A. § 2000e
et seq., as a result of her termination from her position as a
sales associate at the Saks Fifth Avenue ("Saks") store located in
Greenwich, Connecticut on or about March 3, 2007.  Following
dismissals of many of the claims originally raised, remaining in
the action is an allegation that Ms. Hamza was impermissibly
terminated in retaliation for her requests for leave for Ramadan,
in accordance with her Islamic religious tradition in 2006.

        The defendant filed three motions in limine with regard to
pretrial matters.  The first motion (Motion 1) seeks to exclude the
testimony of plaintiff's proposed economic expert under Daubert and

Federal Rule of Evidence 702.  The second motion (Motion 2) argues that plaintiff's claims for punitive damages and front pay are inappropriate and should be stricken, that the plaintiff's claims for back pay should be limited, and that the plaintiff, her counsel and all witnesses should be precluded from submitting evidence of or testimony about any of these claims.

Finally, the third motion (Motion 3) asks this Court to preclude the introduction of testimony or evidence concerning claims previously dismissed in this action and testimony from other employees of Saks which is not related to Ramadan 2006.  Following the pretrial conference in this case, wherein the plaintiff indicated her intention to call additional witnesses, the defendant submitted an addendum to this motion, extending it to request that the Court preclude certain witnesses from testifying because the defendant believes them to have no relation to Ramadan 2006.

The plaintiff timely responded to each motion and offered opposition to the defendant's arguments.  The motions have now been fully briefed and are ripe for disposition.  This Court will address each of the motions in turn.

## II.  Discussion

### A.   Motion 1

The first motion in limine to be discussed is the defendant's challenge to the plaintiff's proposed economic expert's testimony under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993),

2

and Federal Rule of Evidence 702.  The defendant argues in this motion that the plaintiff's expert, forensic economist Mr. Michael Soudry, seeks to offer testimony of conclusions and opinions which are based upon basic mathematical calculations and are therefore not the product of "technical or specialized knowledge" as required by Federal Rule of Evidence 702, and thus should be barred from presentation as expert testimony pursuant to Daubert.

Federal Rule of Evidence 702 provides that: "[i]f . . . technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise . . ."  The United States Supreme Court placed trial judges in the position of gatekeepers with regard to the expert testimony requirements of Federal Rule of Evidence 702 in Daubert when it held that proposed expert testimony should be excluded by the trial judge if he determines that it does not meet the definition of the same set forth by Federal Rule of Evidence 702.  509 U.S. at 589-90.

The plaintiff proposes that Mr. Soudry will testify as to the amount of economic loss that the plaintiff has incurred as a result of her termination from Saks.  The defendant argues that Mr. Soudry did not utilize any "specialized" knowledge in order to reach his conclusions in this regard, but rather employed basic mathematical

calculations, and thus his testimony will not be helpful to the fact-finder.

The plaintiff responded to the defendant's arguments, asserting that Mr. Soudry's calculations are indeed based upon specialized knowledge outside the spectrum of "basic calculations" and that this assertion is bolstered by the fact that forensic economists, including Mr. Soudry, have been permitted to testify in federal court in the past. The plaintiff also cited multiple federal district cases wherein forensic economists offered to testify to past and future earnings have been permitted to testify as experts. Finally, the plaintiff listed all of the principles relied upon by Mr. Soudry in reaching his opinion as to economic damages in this case and maintained that this is evidence that technical and specialized knowledge was utilized beyond basic mathematical calculations.

This Court agrees with the plaintiff's position on Mr. Soudry's proposed testimony as to his qualifications. His opinion, as set forth within his report, was based upon a calculation not only of Ms. Hamza's earnings over the three years leading up to her termination, her statistical work life expectancy, the fringe benefits to which she was entitled at Saks, and her mitigation earnings (all earnings which she has received from the time of her termination until the suspected date of trial); but also the average earnings growth rate in the United States labor market, the

probability of unemployment, based upon New York area unemployment statistics, as well as job maintenance expenses for both her job at Saks and her post-termination employment at Lord & Taylor and Bloomingdale's.  While it is true, as the defendant points out, that most, if not all of the statistical bases for Mr. Soudry's calculations can be found online and are readily available to anyone who seeks them out, this Court is of the opinion that without technical and specialized knowledge and skill, one would not be able to appreciate or calculate the importance and effect that each of the bases has on Ms. Hamza's total economic loss.  Mr. Soudry has employed his specialized knowledge as a forensic economist to organize and utilize each piece of this earnings "puzzle" into a final calculation at which fact-finders would not be able arrive themselves if each piece of information were presented to them individually.  To put it differently, simply because the necessary ingredients of Mr. Soudry's final opinion were readily attainable does not mean that it did not require specialized knowledge in order to place them together into a meaningful economic loss calculation.

Further, the Southern District of New York cases cited by the defendant to bolster its argument that Mr. Soudry's opinion should not be admissible are factually distinguishable from the instant situation.  In <u>Schwartz v. Fortune Magazine</u>, 193 F.R.D. 144 (S.D.N.Y. 2000), the Southern District of New York excluded the

economic damages testimony of an accountant with regard to the plaintiff's lost commissions as a result of his termination. In that case, the court found that the expert's area of expertise was outside of that to which she proposed to testify in the Shwartz trial, and that her testimony was "unhelpful" because it was based upon simple calculations.  The court cited Gray v. Briggs, 45 F. Supp. 2d 316, 323 (S.D.N.Y. 1999), to support its conclusion.  Gray disqualified an expert witness because he did not have sufficient expert knowledge to testify on the issues to which he proposed to testify.  Based upon this citation, it seems that the decision in Shwartz was based largely upon the expert's qualifications, rather than the technical nature of her calculations, and it seems that the final statement of the court that the calculations were based upon basic mathematics could be construed as dicta.  Additionally, the Schwartz court's statement that the expert's report was "unhelpful" because it was based upon basic calculations helps to support this Court's conclusion that Mr. Soudry's report is not based upon basic calculations.  This Court has determined that Mr. Soudry's calculations would be helpful to the fact-finder who might use this information to better appreciate the effect that each of the bases of Mr. Soudry's calculations would have on Ms. Hamza's economic loss.

Similarly, Anderson v. Sotheby's Inc. Severance Plan, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 11816 (S.D.N.Y. June 13, 2005),

does not convince this Court that Mr. Soudry's proffered testimony is not based upon technical knowledge.   In <u>Anderson</u>, the court precluded testimony from an expert witness in the field of executive compensation because "[e]verything that [the witness] has included in his report . . . will be brought out at trial through lay witnesses" and the court found it unlikely that help would be needed to compare the evidence presented. <u>Id.</u> at *9.  Again, this Court has determined that, although each piece of evidence utilized by Mr. Soudry in reaching his conclusions could be presented to the fact-finder individually without the help of an expert, the importance of the evidence, and the way in which each piece fits into the total economic loss of Ms. Hamza would not be fully recognizable without specialized knowledge utilized in Mr. Soudry's report.

Thus, the defendant's first motion in limine is denied. However, for the reasons set forth below, Mr. Soudry will not be permitted to testify to the jury at the trial in this case. Rather, he and the defendant's economic expert shall be permitted to present their findings to the Court should a plaintiff's verdict be returned following trial.

B.   <u>Motion 2</u>

The defendant's second motion in limine seeks a ruling on four distinct issues.   First, the defendant argues that this Court rather than a jury, must decide damages.   Thus evidence or

testimony of damages, including expert testimony offered by the plaintiff's expert, should not be presented to the jury at trial. Secondly, the defendant seeks to have the plaintiff's lost wages damages, if any, cut off as of the date that the plaintiff accepted comparable employment with her subsequent employer, Lord & Taylor. Third, it is argued that the plaintiff is not entitled to front pay damages as a matter of law because her employment at Lord & Taylor, and more recently, Bloomingdale's, is comparable to her employment at Saks. Finally, the defendant seeks an order declaring that, as a matter of law, the plaintiff has failed to establish the necessary standard of maliciousness or recklessness required to entitle her to punitive damages.

As for the first issue raised by Motion 2, this Court agrees with the defendant that case law is clear that the issue of back and front pay damages in a Title VII retaliation case is to be resolved by this Court rather than a jury. In <u>Broadnax v. City of New Haven</u>, 415 F.3d 265, 271 (2d Cir. 2005), the United States Court of Appeals for the Second Circuit held that, in Title VII discrimination cases, "[b]ecause a lost wages award -- whether in the form of back pay or front pay -- is an equitable remedy, a party is generally not entitled to a jury determination on the question." Further, the Second Circuit unequivocally clarified that this concept also applies to retaliation claims in <u>Thomas v. Istar Financial, Inc.</u>, 652 F.3d 141, 152 (2d Cir. 2010), when it

8

held that, without consent of both parties, the issue of economic damages in that case, a retaliation case, was one of equitable remedies and to be decided by the Court. See also Vernon v. Port Auth. of NY and NJ, 220 F. Supp. 2d 223, 234 (S.D.N.Y. 2002) (holding that, under Title VII retaliation claim, back pay is an equitable award to be determined by a judge). Therefore, the Motion 2 is granted to the extent that the questions of whether the plaintiff is entitled to front and/or back pay damages and what those damages should be will not be submitted to the jury, and no testimony or exhibits will permitted to be introduced as to this matter. This includes testimony of the plaintiff's expert economic damages witness, Michael Soudry, who will also not be permitted to testify to the jury as to damages. Should the jury find liability on the part of the defendant at trial, any testimony or exhibits regarding front and back pay damages shall be submitted to this Court following the verdict.

With respect to the subjects of argument that may be presented to this Court for decision in the event of a plaintiff's verdict, however, as to the second issue raised by Motion 2, the plaintiff will be permitted to submit testimony and exhibits that relate to the issues of when she accepted substitute employment and whether that employment was sufficiently comparable to successfully cut off her entitlement to damages. This Court's reading of case law relevant to this subject leads to the conclusion that, under Title

VII, an employee is entitled to back pay damages beginning on the date of her wrongful termination, and continuing until the date that she obtains employment at which she earns the same or more money than earned at her previous job. Taddeo v. Ruggiero Farenga, Inc., 102 F. Supp. 2d 197, 198-99 (S.D.N.Y. 2000); Clark v. Frank, 960 F.2d 1146, 1151 (2d Cir. 1992). Further, all damages during the relevant back pay eligibility period are reduced "by plaintiff's interim earnings or amounts 'earnable with reasonable diligence.'" Taddeo, 102 F. Supp. at 198 (quoting Bonura v. Chase Manhattan Bank, N.A., 629 F. Supp. 353, 355 (S.D.N.Y. 1986) (internal quotation marks omitted)). Interim earnings are defined as any earnings obtained or which could have been obtained by way of reasonable diligence during the time between the wrongful termination and the date of substitute comparable employment which are "less than those previously paid, and are applied to mitigate a continuing injury." Id.

This Court is currently unable to discern as a matter of law when, if ever, the plaintiff obtained comparable employment sufficient to cut off back pay damages. Thus, to the extent that Motion 2 requests that this Court cut off such damages as of the date that the plaintiff began her employment at Lord & Taylor, or in the alternative, the day that she began her employment at Bloomingdale's, the motion is denied. The plaintiff will be permitted to present evidence to this Court as to the comparability

of her later employment as well as the dates on which she began said employment and attempts to obtain substitute employment in the interim.

Similarly, the third contention of Motion 2 is also denied for the time being until the plaintiff is given the chance to present evidence to this Court of the comparability of her current employment and her efforts to obtain comparable employment. An award of front pay is appropriate when "the fact-finder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1182 (2d Cir. 1996). As with the previous issue, this Court is unable to ascertain as a matter of law based upon the filings whether the plaintiff has obtained comparable employment as the term is defined by the Second Circuit, and if not, whether she has any reasonable prospect of doing so in the future. As such, testimony and evidence as to these factual issues will be appropriate should a damages portion of the case become necessary, and Motion 2 must be denied to the extent that it seeks to preclude the same.

Finally, and for substantially the same reasons, the fourth contention of Motion 2 must also be denied. The fourth contention seeks to strike the plaintiff's claim for punitive damages and preclude any testimony or evidence, which unlike the previously discussed testimony and evidence, would be presented to the jury

during trial in this case, relating to punitive damages.  Whether or not the plaintiff can establish the requisite intent on the part of Saks in order to entitle her to a jury instruction on punitive damages is a matter of fact to be proven at trial. Therefore, unless the party opposing the presentation of evidence to the issue can show that no facts can be shown at trial which could prove that the plaintiff is entitled to punitive damages, it is not appropriate for a court to preclude the introduction of such evidence.

Here, whether or not the requisite facts exist and can be proven by testimony and evidence during trial is not discernable at this time.  This Court acknowledges that, under Kolstad v. American Dental Association, 527 U.S. 526, 529-30 (1999), the burden of establishing the appropriateness of punitive damages is a high one, and is on the plaintiff to prove either "malice" or "reckless indifference" to the plaintiff's Title VII rights.  Id. at 526. However, this Court does not believe it to be appropriate to determine at this juncture whether or not the plaintiff will be able to make this factual showing at trial.  No motion for summary judgment was granted or even filed as to whether issues of material fact exist relating to this issue, and thus the law of this case should not be disturbed through the determination of an effectual motion for partial summary judgment filed as a motion in limine. Point Productions, A.H. v. Sony Music Entm't, Inc., 215 F. Supp.

2d. 336 (S.D.N.Y. 2002).  Therefore, the plaintiff will be able to present evidence and testimony to the jury as to the defendant's motive or animus, and this Court will make the appropriate determination of whether a charge to the jury will include instructions relating to punitive damages following the presentation of all evidence.

C.   Motion 3

The defendant's final motion in limine asks this Court to exclude all testimony about and evidence of claims previously dismissed from this action.   The dismissed claims sounded in national origin, religious and disability discrimination.   This motion also seeks to have testimony of other Saks employees precluded to the extent that it does not relate to Ramadan 2006. The defendant argues that any evidence or testimony about discrimination for any other reason than the plaintiff leaving early for Ramadan in 2006, and testimony about the treatment of other employees is unnecessarily confusing to a jury, and its marginal probative value to the Ramadan retaliation claim is far outweighed by the unfair prejudicial effect it will have on the defendant.   The defendant supplemented Motion 3 following the November 14, 2011 pretrial conference in this case, wherein the plaintiff expressed her intent to call two witnesses not previously listed on her witness list, and the plaintiff's November 16, 2011 transfer of an updated witness list to the defendant which

contained a third new witness.  The defendant's addenda request that these three witnesses be specifically precluded from testifying because each purports to give testimony that the defendant argues is irrelevant to the plaintiff's retaliation claim.  Proposed witness Aziza Ben-Mansour, an employee that worked at the same store as the plaintiff beginning after the plaintiff was terminated, will supposedly testify as to the environment for Arabs and Muslims at Saks Fifth Avenue in Greenwich, Connecticut. Proposed witness Juliette Nolta, one of the plaintiff's former customers, will supposedly testify regarding an incident in which she was involved in a dispute between Ms. Hamza and another Saks employee.  This incident has been advanced by Saks as being one of the contributing factors in Saks' decision to terminate Ms. Hamza. Proposed witness Karen Novak, another previous employee of Saks, is offered to testify regarding Ms. Hamza's positive work performance in the past, and her ability to work with Ms. Hamza.

The plaintiff responded to Motion 3 by arguing that the defendant's motion is too broad to be decided in limine and does not seek to have specific evidence or testimony excluded.  She agreed to not offer any evidence that is not relevant to her retaliation claim, but asks this Court to withhold ruling on this motion in limine and rather rule on motions to exclude specific evidence as they are introduced during trial.  She also responded

to the defendant's addenda specifically and argued the relevance of each of the specific witness's testimony.

The determination of Motion 3 turns on the relevance rules of the Federal Rules of Evidence. Federal Rule of Evidence 402 presents the permissive general rule that "all relevant evidence is admissible, except as otherwise provided." "Relevant evidence" is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." These general rules are consistently interpreted as being very permissive and intended to lead to liberal admission of evidence if it has <u>any</u> tendency to help to prove or disprove an actual issue in the case, no matter how slight.

However, when the probative value of certain evidence considered relevant under Federal Rule of Evidence 401 is quite low, Federal Rule of Evidence 403 often precludes its introduction and serves as a protection against "undue liberality." <u>United States v. Mangan</u>, 575 F.2d 32, 33 (2d Cir. 1978). Federal Rule of Evidence 403 grants courts the discretion to exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . ."

15

With these controlling rules of evidence in mind, it is important to take into specific consideration each of the elements of the plaintiff's cause of action which must be proven and which are in dispute in the case at hand.  In order to prove her claim of retaliation under the "opposition" clause of Section 704 of Title VII, the plaintiff must prove that she "has opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e-3(a).  Courts have construed these requirements into a four-part prima facie case that a plaintiff must prove in order to be successful in an opposition retaliation claim.  The plaintiff must prove that: (1) she engaged in protected activity, i.e., opposition of practices which she reasonably believed to be an employment practice made unlawful by Title VII;[1] (2) that Saks was aware of her participation in protected activity; (3) that she was subjected to an adverse employment action; and (4) that there was a nexus between her participation in a protected activity and the adverse employment action.  <u>Wanamaker v. Columbian Rope Co.</u>, 108 F.3d 462, 465 (2d Cir. 1997); <u>Galdieri-Ambrosini</u>, 136 F.3d 276 (2d Cir. 1998).

---

[1]<u>Galdieri-Ambrosini v. National Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998) (quoting <u>Reed v. A.W. Lawrence & Co.</u>, 95 F. 3d 1170, 1178 (2d Cir. 1996) (internal quotation marks omitted)) ("With respect to the first element, participation in protected activity, the plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a 'good faith, reasonable belief that the underlying employment practice was unlawful' under that statute.").

16

Additionally, the defendant contends that it will offer a "legitimate, nondiscriminatory reason" ("LNDR") for terminating the plaintiff -- that her work performance had declined and that the defendant had received a significant number of complaints about the plaintiff from coworkers, venders and customers.  Thus, should the plaintiff establish a prima facie case, in order to prevail on her claim, she must also present sufficient evidence to convince a jury by a preponderance of the evidence that this LNDR is a pretext for the actual retaliatory motive behind her termination.  Holava-Brown v. GE, 1999 U.S. App. LEXIS 20146 *8 (No. 98-9661) (2d Cir. 1999) (unpublished) (The Second Circuit analyzes retaliatory discharge claims "according to the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)").

Therefore, any testimony and/or evidence which lends itself, ever so slightly, toward the proof or disproof of any of the above-outlined required elements of the plaintiff's case is relevant and admissible, subject to this Court's discretionary power under Federal Rule of Evidence 403.  With these required offerings of proof and evidentiary rules in mind, this Court finds as follows:

1.   Any testimony and/or evidence relating to the plaintiff's previously dismissed disability discrimination claim is wholly irrelevant to any issue in contention in her current retaliatory discharge claim, and thus any evidence of Ms. Hamza's injury and/or disability, or of the defendant's animus toward her with regard to

any injury or disability is hereby precluded from introduction at trial pursuant to Federal Rules of Evidence 401 and 402.  This includes all exhibits listed in the defendant's memorandum of law in support of Motion 3 (ECF No. 81) which pertain to the plaintiff's medical history, alleged disability, and/or health problems from which she suffered.

2.   Further, this Court also agrees with the defendant that any evidence or testimony relating to a claim that Ms. Hamza was allegedly denied leave under the Family and Medical Leave Act is not probative of any disputed issue in this case, and must also be excluded under Federal Rules of Evidence 401 and 402.  This includes all exhibits listed in the defendant's memorandum of law in support of Motion 3 (ECF No. 81) which pertain to the plaintiff's applications for a leave of absence during any of her years of employment at Saks.

3.   Further, this Court agrees with this defendant that any evidence of national origin discrimination will be irrelevant to the plaintiff's retaliation claim. In a review of the pretrial information provided to this Court by the plaintiff, it does not appear that the plaintiff contends that any alleged protected activity on her part was a result of national origin discrimination on the part of the defendants. Thus, no evidence of the same could be relevant to her retaliation claim.  Accordingly, any evidence or testimony about the plaintiff's previously dismissed national

18

origin discrimination claim is excluded pursuant to Federal Rules
of Evidence 401 and 402.

4.   However, this Court believes that evidence and testimony
regarding the general treatment of and atmosphere for Muslims at
Saks' Greenwich store could be probative of three elements of the
plaintiff's case.   First, this evidence could be probative of
whether or not the plaintiff actually and reasonably believed that
the alleged denial of her request to leave early during Ramadan
2006 (assuming that she can prove that such a denial was made) was
an action "made illegal by" Title VII.   In other words, evidence of
perceived negative treatment of Muslims at Saks could tend to show
that the plaintiff actually and reasonably believed that any denial
of such a request was motivated by discriminatory animus based upon
her protected class status as a Muslim, and thus, that she engaged
in a protected activity.

Further, evidence that Muslims were treated poorly at the Saks
Greenwich store is probative of the causal connection between the
plaintiff's termination and the alleged protected activity of
leaving early during Ramadan 2006.   In <u>Sumner v. USPS</u>, 899 F.2d
203, 209 (2d Cir. 1990), the Second Circuit held that causal
connection "can be established indirectly with circumstantial
evidence, for example, by showing that the protected activity was
followed by discriminatory treatment or through evidence of
disparate treatment of employees who engaged in similar conduct."

19

Under this reasoning, it seems logical that evidence of discriminatory treatment toward other Muslims would also qualify as circumstantial evidence which could indirectly show causal connection.

Finally, this evidence could be probative of the plaintiff's required showing that the defendant's proffered LNDR is pretextual. The plaintiff can present two separate types of evidence to attempt to rebut a defendant's LNDR. First, she can present negative evidence, or evidence that tends to show that the defendant's proffered LNDR is not the true reason by way of discrediting the veracity of the LNDR. Secondly, the plaintiff may offer positive evidence that tends to show that the "real reason" for the termination was retaliation. Appropriate evidence of discriminatory animus toward Muslims at the workplace would be an example of this type of evidence.

Further, this Court does not believe that this evidence, as a class at least, if properly introduced and developed, runs an unreasonably high risk of confusing the issues or misleading the jury, nor does it seem that the probative value of this evidence is "substantially outweighed by the danger of unfair prejudice" such that a sweeping ruling on its admissibility is appropriate under Federal Rule of Evidence 403. The defendant will have a full opportunity to cross-examine witnesses regarding their testimony, and will be able to offer counter-evidence and to develop all

aspects of evidence and testimony presented by the plaintiff. However, as individual testimony and evidentiary submissions are presented at trial, this Court will make the necessary determinations as they are raised by the parties on whether the offerings become overly prejudicial or confusing, and will make proper admissibility rulings at that time. Thus, ruling on the admissibility of specific testimony and evidence relating to discrimination toward Muslims at Saks' Greenwich store is deferred until trial.

5.   A similar ruling is made regarding evidence of previous positive employment evaluations and testimony of positive impressions of the plaintiff's performance before Ramadan 2006. This Court finds this evidence may be probative of pretext and causal connection, and thus does not find it to be inadmissible pursuant to Federal Rules of Evidence 401 and 402. However, as with the above ruling, it is not yet appropriate to make a broad ruling as to admissibility pursuant to Federal Rule of Evidence 403, and thus ruling on the admissibility of specific offerings of evidence and testimony is deferred for trial.

6.   Further, as outlined above, the defendant has submitted two addenda to Motion 3, seeking to preclude three specific witnesses from testifying, Ms. Aziza Ben-Mansour, Ms. Karen Novak, and Ms. Juliette Nolta. This Court agrees with the defendant that any testimony that Ms. Ben-Mansour may have regarding her treatment

as a Muslim during her employment at Saks' Greenwich store location is irrelevant under Federal Rules of Evidence 401 and 402 and is not admissible.   Ms. Ben-Mansour was not employed at this Saks location until 2008, after Ms. Hamza's termination.   Therefore, she cannot speak to the general treatment of Muslims or any other occurrence before, during or after Ramadan 2006 or at any time when Ms. Hamza was employed by Saks.   This Court finds that she is precluded from testifying at trial.

Additionally, the testimony of Karen Novak is not relevant to the plaintiff's retaliation claim. The plaintiff argues that she will offer Ms. Novak to testify as to the fact that she did not have difficulty working with Ms. Hamza, and also to testify to Ms. Hamza's past work performance. However, there is no evidence presented that Ms. Novak was a supervisor with the ability to evaluate Ms. Hamza or any Saks employees, nor does a single coworker's positive opinion about Ms. Hamza serve to rebut the defendant's position that management at Saks Greenwich received complaints from other coworkers, customers and vendors about her. Therefore, Ms. Novak's testimony is not relevant to any issue in contention in this case, and she is precluded from testifying pursuant to Federal Rules of Evidence 401 and 402.

However, the testimony of Ms. Nolta appears to this Court to be relevant as to the issue of pretext because it is argued that the plaintiff's behavior regarding an incident with Ms. Nolta was

a factor leading to her dismissal.  So long as this contention continues to be maintained by the defendant, her testimony to all matters of which she has personal knowledge concerning the incident are relevant to pretext and will be admissible pending any trial objections on other grounds.

      7.   Despite the findings of initial admissibility of certain broad categories of evidence and testimony, this Court does not purport to rule on the final admissibility of any specific offering of evidence and/or testimony unless clearly noted otherwise and, as outlined above, intends to make such specific rulings upon objection at trial.  Similarly, while this Court has found that certain witnesses will not be precluded from testifying as to certain issues, counsel for both parties are cautioned to avoid leading any witness into testimony about subjects that have been deemed irrelevant and inadmissible above. Finally, this Court does not intend through this opinion to disturb the law of this case established at summary judgment. Despite the fact that some evidence of previously dismissed claims may be relevant to the plaintiff's retaliation claim, no dismissed claims have been reinstated and the only claim to be argued at trial is the plaintiff's claim for retaliation based upon her alleged insistence upon leaving early during Ramadan in 2006.

III.   <u>Conclusion</u>

For the reasons set forth above, the defendant's first motion in limine to exclude the testimony of the plaintiff's expert witness (ECF No. 72) is DENIED.  The defendant's second motion in limine, to strike plaintiff's claim for punitive pay damages, and to limit plaintiff's claim for back pay damages (ECF No. 76) is DENIED to the extent that it sought to strike the plaintiff's claim for punitive damages and to limit, as a matter of law the back and front pay damages to which she is entitled before evidence can be presented to the court regarding the same, and is GRANTED to the extent that it sought to limit any testimony and evidence presented regarding back and front pay damages to presentation to the Court for decision rather than a jury.  Finally, this Court DEFERS making a ruling as to specific offerings of evidence and testimony under the defendant's third motion in limine, to preclude the introduction of testimony or evidence concerning claims previously dismissed in this action and testimony from other employees not related to Ramadan 2006 (ECF No. 80) until trial, with the exception of evidence regarding the plaintiff's previously dismissed claims of disability discrimination and failure to grant leave under the Family and Medical Leave Act, with regard to which the defendant's third motion in limine is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    December 5, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE